UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL E. CULP, | ) Case No. EDCV 07-504 JC |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## I. SUMMARY

On May 9, 2007, plaintiff Daniel E. Culp ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; May14, 2007 Case Management Order, ¶ 5.

///

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II.  BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 2, 2004, plaintiff filed applications for supplemental security income and disability insurance benefits. (Administrative Record ("AR") 81-83, 357-59). Plaintiff asserted that he became disabled on May 1, 2003, due to "mental condition and paranoia." (AR 98-104). The ALJ held hearings on March 20, 2006, and July 18, 2006. (AR 372-95). Although plaintiff was not himself present at either hearing, plaintiff's attorney was present at both such hearings. (AR 374, 389).

On November 24, 2006, after examining the medical record and hearing testimony from medical and vocational experts, the ALJ determined that plaintiff was not disabled through the date of the ALJ's decision. (AR 12-22; 372-387, 388-395). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: schizoaffective disorder with depressive features and methamphetamine abuse, not in remission (AR 15); (2) plaintiff would still suffer from a severe impairment or combination of impairments if he stopped his substance use (AR 18); (3) whether or not plaintiff stopped his substance use, plaintiff's impairments, considered singly or in combination, would not meet or medically equal a listed impairment (AR 15, 18-19); (4) plaintiff could perform simple repetitive, non-public tasks but was unable to maintain regular attendance and be punctual (without stopping his substance use) (AR 15); (5) if plaintiff

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

stopped his substance use, he would have no physical limitations and could perform simple, repetitive tasks with occasional interactions with the public, but should not be allowed to handle money or be exposed to personal or business financial data (AR 19); (6) plaintiff could not perform his past relevant work (without stopping his substance use) (AR 17); (7) if plaintiff stopped his substance use he could perform his past relevant work as a cleaner (AR 21); and (8) there are no jobs that exist in significant numbers in the national economy that plaintiff could perform (without stopping his substance use) (AR 18).[2]

The Appeals Council denied plaintiff's application for review. (AR 5-7).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

///

---

[2] Having determined that plaintiff could perform his past relevant work as a cleaner if plaintiff stopped his substance abuse, the ALJ did not make a finding as to whether, if plaintiff stopped his substance abuse, there were jobs that exist in significant numbers in the national economy that plaintiff could perform.

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform his past relevant work?[3] If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

///

---

[3] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment. Robbins v. Social Security, 466 F.3d 880, 883 (9th Cir. 2006) (citations omitted).

### B. Analysis in Cases Involving Claimant's with Drug/Alcohol Abuse Issues

Where a claimant is disabled but suffers from drug addiction or alcoholism, the ALJ must conduct a drug and alcohol analysis to determine which of a claimant's limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b). If the remaining limitations would be disabling, the claimant's substance abuse is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied. See 20 C.F.R. §§ 404.1535(b), 416.935(b); 42 U.S.C. § 423(d)(2)(C); see also Parra v. Astrue, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing same). An ALJ must identify plaintiff's remaining limitations to determine whether those limitations were themselves disabling. See Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001) ("[A]n ALJ must conduct a 'differentiating' analysis to separate alcoholism and drug-related impairments from the. . . non-substance-abuse-related impairments [that] are 'severe.'"). While the burden is on a claimant to establish that his impairments would have been disabling absent substance abuse, Parra, 481 F.3d at 748, Ball, 254 F.3d at 821, the Administration has the responsibility of developing a full and fair record to determine which of plaintiff's limitations would remain absent substance abuse. See 20 C.F.R. § 404.1512(e).

### C. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere

scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.   DISCUSSION

Plaintiff contends that: (1) the ALJ erred in determining that plaintiff was an unnecessary witness and violated plaintiff's due process right to a fundamentally fair hearing by proceeding without plaintiff's presence and testimony; and (2) the ALJ erred in ignoring the side effects of plaintiff's medications and the resulting impact on plaintiff's ability to sustain full time competitive employment. (Plaintiff's Motion at 2-6). As discussed below, plaintiff fails to demonstrate that he is entitled to relief on either claim.

### A.   The ALJ Did Not Materially Err in Proceeding without Plaintiff's Presence or Testimony

#### 1.   Relevant Facts

On February 15, 2006, plaintiff was mailed a notice of the March 20, 2006 hearing with the ALJ. (AR 72-75). On February 22, 2006, plaintiff's counsel sent a facsimile transmission to the ALJ which reflected that, according to plaintiff's mother, plaintiff had been incarcerated on January 29, 2006, would be held for eight months, and was in the process of being transferred to Tehachapi [State Prison]. (AR 79, 94). Such letter inquired as to how the ALJ wanted to proceed with the hearing. (AR 79, 94).

///

1  On March 20, 2006, plaintiff's counsel appeared without plaintiff at the
2  hearing before the ALJ.  (AR 374).  As counsel's letter was not in plaintiff's file
3  and had not been reviewed by the ALJ, plaintiff's counsel repeated the substance
4  of the information contained therein, and provided a copy of the letter which was
5  marked as an exhibit.  (AR 374-75).  Although plaintiff's counsel did not expressly
6  seek a continuance, he did indicate that plaintiff was an essential witness whom he
7  wished to have testify.  (AR 375).  The ALJ elected to take testimony from a
8  medical expert without prejudice to recalling the expert if needed.  (AR 375).  A
9  second hearing, scheduled for June 6, 2006, was postponed, apparently after a
10 notice of hearing sent to plaintiff on May 25, 2006, was returned as undeliverable.
11 (AR 12, 34-37, 389).
12  The second hearing ultimately took place on July 18, 2006.  (AR 389).
13 Plaintiff's counsel again appeared without plaintiff.   (AR 389).  A notice of this
14 hearing was previously mailed to plaintiff's last known address, apparently his
15 mother's home, on June 30, 2006.  (AR 12, 26-29, 389).  Plaintiff's counsel
16 represented that he had not received a response from plaintiff, but had been
17 informed by plaintiff's mother, that plaintiff allegedly would be released on
18 October 11, 2006.  (AR 389-92).  Plaintiff's counsel indicated that he had no
19 information as to where plaintiff was incarcerated and had not had any contact with
20 plaintiff's mother to find out more specific information about that.  (AR 390-91).
21 In response to the ALJ's inquiry regarding how the matter should proceed,
22 plaintiff's counsel stated that there was a need to have the witness there, though he
23 did not expressly request a continuance.  (AR 390).  The ALJ informed plaintiff's
24 counsel that, in the absence of something more definitive about plaintiff's location,
25 the ALJ would proceed to take testimony from the vocational expert who was
26 present, and would send a notice to plaintiff's last known address directing plaintiff
27 to show cause why he could not appear and why there should be a supplemental
28 hearing.  (AR 391).  The ALJ indicated that if plaintiff demonstrated good cause, a

7

supplemental hearing would be held where plaintiff could testify. (AR 391). The ALJ granted plaintiff's counsel thirty (30) days to supply plaintiff's updated mailing address to which the notice to show cause would be sent. (AR 392, 394-95). On July 24, 2006, plaintiff's counsel, via facsimile, supplied the ALJ with plaintiff's mailing address at the Tehachapi State Prison. (AR 24).

On September 18, 2006, a notice to show cause was sent to plaintiff at the Tehachapi State Prison. (AR 23). The notice advised plaintiff that if he felt a supplemental hearing should be held, he must provide a written statement with a good reason for the need therefor by October 2, 2006. (AR 23). As of November 24, 2006 – the date the ALJ issued his decision – plaintiff did not respond. (AR 12). In the absence of a response from plaintiff indicating that plaintiff wanted there to be a supplemental hearing, the ALJ determined that plaintiff was an "unnecessary witness" and made findings based on the evidence in the record and the testimony of the medical expert and a vocational expert. (AR 12, 22).

### 2. Analysis

Plaintiff contends that the ALJ erred in determining that plaintiff was an unnecessary witness and violated plaintiff's due process right to a fundamentally fair hearing by proceeding without plaintiff's presence and testimony. (Plaintiff's Motion at 2-4). This Court disagrees.

First, to the extent plaintiff's claim is predicated upon the Social Security Administration's Hearing, Appeals, and Litigation and Law Manual ("HALLEX"), it fails. (Plaintiff's Motion at 4 n.1). The HALLEX is strictly an internal agency manual, with no binding legal effect on the Administration or the Court. Clark v. Astrue, __ F.3d __, 2008 WL 2512960 *4 (9th Cir. Apr. 11, 2008) (citing Moore v. Apfel, 216 F.3d 864, 868-89 (9th Cir. 2000)). Though the Ninth Circuit has recognized that the HALLEX, as an agency manual, is entitled to respect to the extent it has the power to persuade, such Court will not review allegations of noncompliance with such manual. Clark, 2008 WL 251960 at *4 (as agency

manual, HALLEX is entitled to respect to extent it has power to persuade); Moore, 216 F.3d at 869 ("[W]e will not review allegations of noncompliance with the [HALLEX] manual.") (citation omitted).

Even assuming the HALLEX otherwise would provide a cognizable basis upon which to grant relief, plaintiff refers to an outdated version of a HALLEX section which was materially amended prior to the events in issue, and subsequent to McNatt v. Apfel, 201 F.3d 1084, 1088 (9th Cir. 2000), a case upon which plaintiff heavily relies.[4] The pertinent provision, amended July 22, 2005, now provides:

> If a claimant's representative appears at a scheduled hearing without the claimant:
>
> 1. The ALJ may determine that the claimant has constructively waived the right to appear at the hearing if the representative is unable to find the claimant, the notice of hearing was mailed to the claimant's last known address, and the contact procedures of 20 CFR §§ 404.938 and 416.1438 have been followed.
>
> If the hearing includes expert witnesses, the ALJ may choose to proceed with the hearing, accepting the testimony of the witnesses and allowing the claimant's representative to question the witnesses and make arguments regarding the claimant's application.

///

---

[4]The prior version of the pertinent section, which was in issue in McNatt, provided:

If a claimant's representative appears at a scheduled hearing without the claimant, the ALJ must determine whether the claimant is an essential witness for a proper determination of the case.

1. If the claimant is not considered to be an essential witness, the ALJ should proceed with the hearing and issue the decision.

2. If an ALJ determines that claimant is an essential witness, the ALJ should offer to postpone the hearing so that the claimant may appear.

201 F.3d at 1088 (citing HALLEX § I-2-4-25(D)).

>        The ALJ should advise the claimant's representative that a Notice to Show Cause will be issued asking the claimant why he or she did not appear, and why a supplemental hearing should be held. If the claimant fails to respond to the Notice to Show Cause or fails to provide good cause for failure to appear at the scheduled hearing, the ALJ may then determine that the claimant has constructively waived his or her right to appear for a hearing, and the ALJ may issue a decision on the record.
>
>    2.   If the claimant provides good cause for failure to appear, the ALJ will offer the claimant a supplemental hearing to provide testimony.

HALLEX § I-2-4-25(D).[5]

Plaintiff fails to demonstrate that the ALJ violated this provision. The record instead reflects that the ALJ complied or materially complied with the procedures set forth therein. Notices of the hearings were sent to plaintiff's last known address(es). (AR 12). When plaintiff failed to appear at the July 18, 2006 hearing, the ALJ advised plaintiff's counsel that a notice to show cause would be issued to plaintiff at plaintiff's current address to be supplied by plaintiff's counsel. Plaintiff's counsel supplied the ALJ with what he represented to be, plaintiff's location. (AR 24). On September 18, 2006, the notice was issued and sent to plaintiff at the prison address provided by plaintiff's counsel. (AR 23). Plaintiff did not respond. (AR 12, 391). Thereafter, the ALJ issued a decision based on the record before it. The ALJ's conduct materially comports with the above-referenced HALLEX provision.

Second, to the extent plaintiff's claim is predicated on a "due process" violation, it likewise fails. Applicants for social security benefits are entitled to due process in the determination of their claims. Holohan v. Massanari, 246 F.3d 1195, 1209 (9th Cir. 2001) (citing Richardson v. Perales, 402 U.S. 389, 401-02 (1971)). Here, plaintiff fails to demonstrate that he was deprived of due process. As the facts above demonstrate, the ALJ afforded plaintiff notice and multiple opportunities to be present at the hearings and to testify. The ALJ attempted,

---

[5] Unlike the prior version of this HALLEX provision, the current version does not require the ALJ to make a finding as to whether or not plaintiff is an essential witness.

10

through his inquiries to plaintiff's counsel, to obtain specific and updated information regarding plaintiff's whereabouts and potential availability to appear at a hearing. (AR 12, 389-91). The notice to show cause – which afforded plaintiff an opportunity to seek a supplemental hearing – was sent to the address plaintiff's counsel represented to be plaintiff's current address. (AR 24). In light of the contents of such notice, and the absence of a response from plaintiff by late November – over a month after plaintiff allegedly was to be released – it was certainly reasonable for the ALJ to conclude that plaintiff did not feel a supplemental hearing should be held. (AR 23).[6] Accordingly, although it may have been preferable for the ALJ to have continued the entire proceedings to a date after plaintiff's anticipated release, the Court cannot say on this record that it was unreasonable for the ALJ to proceed as he did or that plaintiff was thereby deprived of due process.

      Finally, to the extent plaintiff contends that the ALJ's finding that plaintiff was an unnecessary witness is materially erroneous, he fails to so demonstrate. Plaintiff proffers no evidence or argument that he would have presented at the hearings if he had been there, let alone evidence or argument that may have affected the outcome. Accordingly, he fails to demonstrate that the ALJ materially erred in finding that he was an unnecessary witness.

      **B.    The ALJ Did Not Materially Err in Assessing Plaintiff's Allegations Regarding the Side Effects of Medication**

      Plaintiff contends that the ALJ erroneously ignored the alleged side effects of plaintiff's medications and the resulting impact on plaintiff's ability to sustain

---

[6]Although not a basis of the Court's decision, the Court notes that (i) there is nothing in the record to suggest that plaintiff did not in fact receive the notice and affirmatively elect not to respond; and (ii) plaintiff's request to the Appeals Council to review the ALJ's decision does not appear to have been accompanied by a request to supplement the record with evidence from plaintiff or of plaintiff's non-receipt of such notice or an assertion that the ALJ's decision should be overturned due to the absence of plaintiff's testimony.

full time competitive employment. (Plaintiff's Motion at 5-6). Plaintiff's claim lacks merit.

### 1. Relevant Facts
#### a. Plaintiff's Medications

In June 2002, during a hospitalization, the treating physician noted plaintiff had no adverse reactions to Risperdal or Neurontin. (AR 228).

On February 13, 2004, plaintiff indicated to a social worker that he had "eye twitches due to medication" but that he wanted to "get back on" Depakote and Wellbutrin because they "have worked well for him in the past." (AR 366).

Plaintiff's treating psychiatrist, Ronald Marcus, began treating plaintiff when he was released on parole in March 2004 after being incarcerated for 11 months. (AR 295-97). During an initial interview with a social worker, plaintiff indicated that prior to his incarceration he was taking Neurontin and Risperdol, but that when he entered prison his medications were changed to Depakote, Wellbutrin and Zyprexa. (AR 296). Plaintiff did not complain of any side effects from his medications and indicated that Depakote and Zyprexa were helpful. (AR 296). Plaintiff also indicated that he had suffered from "facial gestures and body movements" since childhood and that he was given Ritalin for ADHD in his youth. (AR 296).

Plaintiff was first seen by Dr. Marcus on March 18, 2004. (AR 293, 302). In the initial treatment session, plaintiff indicated that Depakote was "very helpful" and that he was also taking Wellbutrin and Zyprexa without any complaints of side effects. (AR 293, 302). At the next session on April 22, 2004, plaintiff had no complaint of side effects. (AR 293).

In an unsigned "Disability Report-Adult" form apparently completed by plaintiff on April 7, 2004, he indicated he had no side effects from his prescriptions for "Depakote," "Wellbutrin," and "Zyprexa." (AR 98, 102, 104).
///

In a May 18, 2004, examination of plaintiff, a treating physician observed tics in the right extremities and right eye "a few times." (AR 272). The doctor noted that plaintiff claimed he had suffered from the motor tic movements since childhood. (AR 271, 273). Plaintiff also indicated he was taking Zyprexa, Depakote and Wellbutrin, but did not indicate any side effects. (AR 271-73).

During a May 25, 2004 meeting, plaintiff indicated he was "doing well" with an increased Depakote dose, asked for an increase in his Wellbutrin medication, and had no complaints of side effects. (AR 292).

A "Report of Contact" form was completed by a medical doctor on June 4, 2004. (AR 128, 176). The doctor recounted an interview with another physician who had evaluated plaintiff. (AR 128). The second physician indicated that he had not observed any tics or abnormal movements, but that they "most likely" were due to plaintiff having snorted Wellbutrin while incarcerated. (AR 128).

On July 20, 2004, Dr. Marcus again noted plaintiff had no complaints of side effects. (AR 292). On September 14, 2004, plaintiff indicated he was sleeping well and had no complaint of depression. (AR 292). Plaintiff remained on Depakote, Wellbutrin and Zyprexa during his six months of treatment in 2004 with Dr. Marcus. (AR 310-14).

In an unsigned "Disability Report -Appeal" form apparently completed by plaintiff on October 13, 2004, plaintiff indicated no side effects from Depakote, Wellbutrin, and Zyprexa. (AR 134, 136, 139).

In another "Disability Report - Appeal" form signed by plaintiff on December 29, 2004, plaintiff indicated his prescriptions for "Deprocote" and "Zyprexa" caused fatigue. (AR 156, 159, 162).

Plaintiff apparently was incarcerated again in March 2005 for two months and was released in May 2005. (AR 347, 353, 355). Plaintiff appears to have been given Zoloft during this two-month time period. (AR 327).

///

13

1    During plaintiff's next documented visit with Dr. Marcus, on May 10, 2005,
2 plaintiff refused to take his prescription for Zoloft because it "made him feel too
3 speedy," and also asked that his dosage of Depakote be increased. (AR 353). Dr.
4 Marcus did not continue plaintiff on Zoloft and instead resumed treating him with
5 Depakote, Wellbutrin and Zyprexa. (AR 354).
6    After the May 10, 2005 appointment, plaintiff was again incarcerated. (AR
7 347).
8    On January 12, 2006, plaintiff arrived at Dr. Marcus' office without an
9 appointment because he was about to run out of his medications. (AR 343).
10 Plaintiff indicated he was not taking his Wellbutrin because it was interfering with
11 his sleep. (AR 343). As a result, Dr. Marcus changed the dosage for the
12 Wellbutrin. (AR 343). Plaintiff was no longer being treated with Depakote or
13 Zyprexa, but Dr. Marcus added a prescription for Seroquel. (AR 343, 345).

### b.    The ALJ's Decision

When considering plaintiff's limitations, including those attributable to his substance use, the ALJ found that plaintiff was disabled. (AR 18). However, when considering plaintiff's limitations if plaintiff stopped his substance use, the ALJ found that plaintiff could perform his past work as a cleaner. (AR 19-21). In reaching the latter conclusion, the ALJ determined that plaintiff's statements concerning the intensity, persistence and limiting effects of his alleged symptoms if he stopped substance abuse were not entirely credible. (AR 20-21). In rejecting plaintiff's credibility, the court pointed to internal inconsistencies between plaintiff's statements (e.g., his claim that he could not control his anger and could not deal with people versus his admission that his symptoms improved with medication and his admitted benefits from participation in drug and alcohol abuse programs), the inconsistency between his claim of being unable to work and his conservative treatment course (e.g. no psychiatric hospitalization), and the lack of objective medical evidence to support his claims (e.g., the fact that the claimed

medication side effects had never been medically established or documented).  The ALJ expressly addressed plaintiff's claim that he suffered from side effects, stating:  "Medication side effects have never been medically established or documented and there is no indication [plaintiff's] symptoms could not be controlled with medication treatment.  They were regularly prescribed and when the [plaintiff] was on prescribed medications, their long, regular use, and prescription raises inferences of efficacy and toleration."  (AR 21).

### 2. Relevant Law

An ALJ must consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medication.  Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir.1993) (citing Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir.1988), relief modified, 859 F.2d 1396 (1988)).  "[S]ide effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized."  Varney, 846 F.2d at 585.  Thus, when a claimant complains about experiencing a known side effect associated with a particular medication, the ALJ may disregard the testimony only if he "support[s] that decision with specific findings similar to those required for excess pain testimony."  Id.  Allegations of side effects from medication must be specific and clinically supported.  See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985).

A claimant's subjective statement regarding a symptom must be supported by objective medical evidence, generated by medically acceptable techniques, of an underlying impairment, "which could reasonably be expected to produce the . . . symptoms alleged."  42 U.S.C. § 423(d)(5)(A).  If the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect.  Robbins v. Social Security, 466 F.3d 880, 883 (9th Cir. 2006) (citations omitted).  An ALJ

may not disregard such a complaint solely because it is not substantiated affirmatively by objective medical evidence.  Id.  Unless an ALJ makes a finding of malingering based on affirmative evidence thereof, the ALJ may reject a claimant's complaints regarding the severity of his symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  Id. (citations omitted).  To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective statements (e.g., reputation for dishonesty), conflicts between the claimant's statements and the claimant's conduct, or on internal contradictions.  Id. (citation omitted).

### 3. Analysis

Plaintiff claims that the ALJ ignored the alleged side effects of plaintiff's medications.  Specifically, plaintiff contends that the ALJ failed to consider: (i) plaintiff's February 13, 2004 report that his eye twitches were the result of medication; (ii) plaintiff's May 10, 2005 complaint that Zoloft made him feel too speedy; (iii) plaintiff's May 10, 2005 complaint that the decrease in his dose of Depakote resulted in him feeling more depressed; and (iv) plaintiff's January 12, 2006 report that Wellbutrin interfered with his sleep.  Plaintiff's contentions do not warrant relief.

First, the ALJ did not ignore plaintiff's complaints regarding side effects. As the facts above reflect, the ALJ expressly referred to, considered, and rejected plaintiff's contention that the side effects of medication rendered him incapable of performing his past work.  (AR 21).

Second, the ALJ's rejection of plaintiff's credibility concerning the limiting effects of his alleged symptoms if he stopped substance abuse is supported by specific findings stating clear and convincing reasons for doing so.  (AR 20-21). As noted above, the ALJ found internal inconsistencies between plaintiff's statements, an inconsistency between his claim of being unable to work and his conservative treatment course, and an absence of objective medical evidence to

support his claims – including his claims regarding the side effects of his medication. Substantial evidence supports the ALJ's findings.

As to plaintiff's February 13, 2004 complaint that medication was causing his eye to twitch, the record contains multiple other statements by plaintiff indicating that he had suffered from facial and body tics since childhood – at a point when he was taking only Ritalin – not one of the medications about which plaintiff now complains. Moreover, the ALJ noted that plaintiff's eye twitch did not result in any functional limitations and was cosmetic. (AR 18, 20).

As to plaintiff's May 10, 2005 complaint that Zoloft made him feel too speedy, the record reflects that plaintiff took this drug for only an isolated two-month period and stopped taking it after he complained. Thus, the record does reflect this alleged side effect presented a continuing limitation (if a limitation at all).

As to plaintiff's May 10, 2005 complaint that the decrease in his dose of Depakote resulted in him feeling more depressed, it is evident from this complaint itself, that, as the ALJ determined, "there is no indication" that this symptom "could not be controlled with medication treatment[,]" i.e., an increase in the dosage. (AR 21).

Finally, as to plaintiff's January 12, 2006 complaint that Wellbutrin was interfering with his sleep, the record reflects that plaintiff was treated with such medication for at least six months continuously, and off and on for just under two years without any similar complaints. It also appears, based on Dr. Marcus' reduction in dosage, that he believed plaintiff's complaint could be addressed by switching to a lower dosage. Accordingly, the record supports the ALJ's determination that plaintiff's symptom could be controlled with medication.

In short, plaintiff fails to demonstrate that the ALJ ignored his complaints regarding the side effects of his medication or that the ALJ erred, let alone materially erred in rejecting such complaints.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 30, 2008

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE